SHELDEN v. MICHIGAN MILLERS' MUTUAL FIRE-INSURANCE CO

1. CORPORATIONS — SUITS AGAINST — DECEASED OFFICER — TESTIMONY OF OPPOSITE PARTY.

In view of 3 Comp. Laws 1897, § 10212, which provides. that, in a suit against a corporation, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify to matters which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, and not within the knowledge of any surviving officer or agent, it was error, in an action on a policy of insurance, to receive the testimony of plaintiff as to the contents of a letter claimed to have been sent by him to a

deceased secretary of defendant company, where the latter's surviving associates testified that they had never seen such a letter, and that, while it would have been filed if received, a search of the office files failed to reveal it.

2. SAME.

That the surviving associates of a deceased secretary of an insurance company had knowledge of the contents of a certain letter written to him is not to be inferred from the fact that the letter related to official business, so that his possession was the possession of the company.

3. INSURANCE — BREACH OF CONDITION — OTHER INSURANCE — WAIVER.

That insured wrote to defendant company giving notice of a loss, and stating that the adjuster of another company "was here today," to which defendant replied excusing its delay in sending an adjuster, and inquiring the particulars as to the other insurance, does not constitute a waiver of the company's right to insist that the breach of condition in procuring other insurance without defendant's consent rendered the policy void.

4. SAME—OVERVALUATION—WARRANTY.

Act No. 167, Pub. Acts 1897, which provides that no policy of fire insurance shall be declared void by the insurer for breach of any condition of the policy if the insurer has not been injured by such breach, does not affect the rule which renders a policy, under which the valuation is made a warranty, void if a substantial overvaluation is given, irrespective of the motive of the insured.

Error to Wayne; Frazer, J. Submitted April 4, 1900. Decided May 29, 1900.

*Assumpsit* by Allan Shelden against the Michigan Millers' Mutual Fire-Insurance Company on a policy of insurance. From a judgment for plaintiff, defendant brings error. Reversed.

*Crane, Norris & Stevens*, for appellant.

*Frank E. Robson*, for appellee.

HOOKER, J. On December 9th, Tuckey made an application in writing for insurance in the defendant com-

pany upon his gristmill,—$1,000 upon the mill building, and $1,000 on machinery, tools, implements, and fixtures therein.    The application was in the handwriting of the insured, and was signed by him.    It contained the following:

"What is the present cash value of the property to be insured, exclusive of land and property not specified? $10,000.    *    *    *

"How much insurance is there now on this property? None.

"Give schedule of all insurance on back hereof.    What will be the total insurance on the buildings, machinery, boilers, and engine?    $2,000.    *    *    *        •

"And the undersigned applicant hereby *warrants* that the above is a just, full, and true exposition of the facts and circumstances in regard to the property to be insured, and is and shall be considered as the basis on which insurance is to be effected and continued in force; and the same is understood as incorporated in, and forming a part and parcel of, the policy, as a continuing warranty during the life of such policy."

The policy issued to Tuckey, and was made payable to Allan Shelden, the plaintiff, as his mortgage interest might appear.    Shelden received the policy soon after its issue.    It contained the following conditions:

"Reference is made to assured's application and survey on file in the office of this company, which is made part of this policy.    *    *    *    This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof.    *    *    *    This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy.    *    *    *    If an application, survey, plan, or description of property be referred to in this policy, it shall be a part of this contract and a warranty by the insured."

On the day that the policy was issued, the defendant's secretary sent to the plaintiff, Shelden, a letter of which the following is a copy:

"LANSING, MICH., Dec. 9, 1895.
"ALLAN SHELDEN & CO.,
         "Detroit, Mich.

"*Gentlemen:* We today received from Mr. Tuckey application for insurance in this company, and, in accordance with the same, have today sent him our policy No. 02,887, for $2,000, which you, no doubt, will receive in a day or two. You will notice, by examining the policy, that we have not permitted any other insurance besides this $2,000. This, I presume, you will understand without your attention being called to it; but, as I did not wish any misunderstanding in the matter, I mention it now.           Very truly yours,
                "A. T. DAVIS, Secretary.
                       "B."

This letter was produced by the plaintiff upon the trial, and we understand that it is not denied that he received it seasonably.

On December 15, 1897, Tuckey took other insurance on both mill and machinery. It is admitted that no permit for other insurance was ever indorsed upon the defendant's policy, and it is not claimed that any written or oral permit was given. On January 1st defendant assessed the policy $24, which was paid January 23d. March 2, 1898, the property was burned, and the same day Tuckey gave defendant written notice of the loss. Defendant answered that its man would be there the following week. He did not go, and on March 8, 1898, Tuckey wrote defendant again as to his coming, and in this letter said: "Mr. Sage, from the Concordia Co., was here today." On receipt of this letter on March 10, 1898, defendant wrote Tuckey that its man was sick and could not go immediately, and inquired the particulars as to other insurance, if any. March 11th Tuckey wrote, stating particulars as to other insurance. No adjuster was sent, and on March 29, 1898, the following letter was sent to Tuckey by defendant's secretary:

"MICHIGAN MILLERS' MUTUAL FIRE-INSURANCE CO.,
        "LANSING, MICH.
                                    "March 29, 1898.
"Mr. E. C. TUCKEY,
            "Byron, Mich.
    "*Dear Sir:* I have to acknowledge your favors of .
March 11th and March 21st, by which I am for the first
time advised that you had insurance on your mill other
and in addition to our policy. As this other insurance
was procured by you after our policy was issued, and
without a permit therefor indorsed on our policy, by con-
dition of the contract our policy was terminated when the
other insurance was taken out, and there is no liability on
our policy for your loss. You are therefore respectfully
advised that we will not send adjuster; neither do we ad-
vise you to go to any expense or trouble in making claim
against this company.
                        "Respectfully yours,
                            "A. T. DAVIS, Secy."

April 25, 1898, Tuckey submitted proofs of loss, in
which he claimed the sound value of the insured property
to be $7,348.51. On May 3, 1898, these proofs were re-
turned, and the claim made that there was a breach of the
warranty as to value of the premises. August 31, 1898,
the policy was assigned to the plaintiff, and this action
was begun in October. The defense was based on "(1)
other insurance without permission, contrary to warranty
in application and to condition in policy; (2) overvaluation
in application." The plaintiff claimed (1) waiver of breach
on account of other insurance; (2) that there was no over-
valuation. Counsel for the appellee admits that there was
a breach of the condition as to other insurance, which is
fatal, unless the objection was waived. The defendant
concedes that if its secretary had notice of this breach,
and, with such knowledge, levied an assessment and re-
ceived payment of the same thereafter, it is estopped from
setting up such breach. It contends that there was no
competent evidence that the company or any of its officers ·
had notice of other insurance until after the fire.

Tuckey testified that, as soon as he received the Con-
cordia policy, he mailed a letter to A. T. Davis, secretary

of the defendant company, at Lansing, Mich., in a return envelope, postage prepaid, notifying him that he had such insurance. This was not notice, unless the letter was received. He does not say that it was not returned. This testimony was taken under the objection that, if Davis received the letter, that fact was equally within his knowledge, and, he being dead, the testimony of the plaintiff tending to prove it was inadmissible. It was insisted by the plaintiff that it was competent to show the mailing of the letter, because that fact was not equally within Davis' knowledge, and the fact of mailing, proved by Tuckey, helped out by the presumption that a letter mailed reached its destination, is *prima facie* evidence of its reception, although the witness could not have testified to its delivery to Davis; that fact being, in such case, equally within Davis' knowledge. Defendant denied the receipt of such a letter, and the witness was permitted to state its contents, against defendant's objection. Subsequently Mr. Baker and a lady clerk, who were shown to be the only assistants of Mr. Davis in the home office of the company, testified that it was improbable, but possible, that Davis might have received this letter without their knowledge, and that, if he had done so, it would have been filed in the office, but that they had never seen such letter, though each had searched for, and examined every paper in the office for, it, after notice to produce it. The court took the view that, if Davis did not receive the letter, it was not equally within his knowledge, and, if he did receive it, the witness was not disqualified, because the jury were at liberty to find from the testimony of Baker, to the effect that it would be filed if received, that the other officers of the company saw the letter, and knew its contents. He charged the jury as follows:

"The circumstances which the plaintiff claims constitute a waiver in regard to the extra insurance are these: The plaintiff claims that, when this additional insurance was taken out, he wrote a letter to the defendant com-

pany, in which he informed it of the fact that he had taken out this insurance. That letter was objected to upon the ground that this matter was equally within the knowledge of the secretary of the company, Mr. Davis, and, therefore, that it was not admissible. That is the law, gentlemen of the jury, that when a person, even if he is an officer of the corporation (the statute expressly says so), that if he dies, and this matter is in his knowledge solely, not equally within the knowledge of other officers of the corporation, the testimony in regard to it would be excluded, because there is one man alive to state the thing, and the other man who knew it is dead, and the living man is not allowed to take advantage of his knowledge, when the dead man is not alive to refute his testimony. But I have admitted this testimony for another reason,—for the reason that I do not think it violates this statute at all, for the reason that the writing of this letter and the mailing of this letter were not necessarily equally within the knowledge of this man Davis. Certainly the writing of the letter was not, the mailing of the letter was not, and, if he did not receive the letter, it was not. If he did receive it, it would be equally within his knowledge; that is, the contents of the letter were. But that letter was also filed, and was the property of the company, and the contents of that letter would survive the death of Mr. Davis, and would be equally within their knowledge, if it ever got into the possession of the insurance company. It has been testified to here that they preserved all their letters and correspondence in regard to matters of this kind. It would not solely be within the knowledge of Davis, and therefore it does not apply."

He also said to the jury that, if they should find that Davis did not receive the letter, plaintiff could not recover. We must assume that they found that he did receive it, from the fact that they found a verdict for the plaintiff.

The learned judge had told the jury that, if Davis did receive the letter, the contents were equally within his knowledge as within that of the writer; but he permitted them to find a verdict upon Tuckey's testimony, upon the theory that it was admissible if other officers of the company had knowledge of the contents. That theory was correct under the statute, but there was no testimony that

warranted the conclusion that it was or might be within the knowledge of any other officer. Baker and the clerk are shown to have been the only persons who had to do with these files, or the business of the office, aside from Davis. Both swear they never saw it, and that, although searched for in the files, it was not there. It is only by accepting Baker's testimony as to the practice of filing letters, and basing a presumption upon it that is in conflict with their positive evidence that this letter never did come to the knowledge of the officers, and that it was not in the files, which was disregarded, that this verdict can be justified. So, if it be conceded that there can be a presumption that the letter was received, we are of the opinion that the proof of the contents was inadmissible, or, if admissible when offered, should have been withdrawn from the jury when it was conclusively shown that the letter was not within the knowledge of, or accessible to, defendant's officers. We think this charge was in violation of the statute.

We may add that it was error for the court to instruct the jury that "the letter was filed, and the contents would survive the death of Davis, and would be equally within the knowledge of other officers if it ever got into possession of the company." It was in the possession of the company if Davis ever received it, but not necessarily within their knowledge as to its contents.

It is also claimed that by excusing the delay on the part of the adjuster, and failing to deny its liability at once when informed that "the Concordia man was there," defendant waived this point. That letter contained no distinct information regarding other insurance, and called for no such immediate action. Defendant had the right to inquire into the facts before announcing its determination. There is no just claim of estoppel in regard to the delay of eight days.

The court instructed the jury that if the valuation in the policy was an honest one, and not grossly overestimated, it would not avoid the policy, but that if Tuckey over-

estimated the property knowingly, for the purpose of procuring a larger insurance than he was entitled to, he should not recover. The valuation was made a warranty, and, under the authorities, a substantial overvaluation would avoid it, irrespective of motive, as shown by the following cases cited by counsel: *American Ins. Co.* v. *Gilbert*, 27 Mich. 429; *Van Buren* v. *Insurance Co.*, 28 Mich. 398; *Ætna Ins. Co.* v. *Resh*, 40 Mich. 241; *Briggs* v. *Insurance Co.*, 65 Mich. 55, 56 (31 N. W. 616). See, also, *Niles* v. *Insurance Co.*, 119 Mich. 252 (77 N. W. 933). We think this rule was not changed by Act No. 167, Pub. Acts 1897.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.