A. M. TODD CO. *v.* FARMERS' MUTUAL FIRE-INSURANCE COMPANY OF ALLEGAN AND OTTAWA COUNTIES.

1. FIRE INSURANCE—ADDITIONAL INSURANCE—WAIVER.

In an action on a fire-insurance policy, defended on the ground that additional insurance had been procured contrary to the conditions of the policy, evidence reviewed and *held* insufficient to warrant a jury in finding that the secretary of the company consented to the additional insurance.

2. SAME—ADDITIONAL INSURANCE—AGENT—WAIVER.

The fact that the soliciting agent of a mutual fire-insurance company, three or four years after forwarding an application to the company, assisted the insured in procuring other insurance, does not constitute a waiver of a condition in the mutual policy prohibiting the procurement of additional insurance.

3. SAME—BREACH OF CONDITION—VOID OR VOIDABLE.

Breach by the insured of a condition prohibiting the procurement of additional insurance renders the policy not merely voidable, but void.

4. SAME—COLLECTION OF ASSESSMENTS—BREACH OF CONDITION—WAIVER.

The collection of assessments on a mutual fire-insurance policy, without knowledge that there has been a breach of condition by procuring additional insurance, does not constitute a waiver.

5. SAME—BREACH OF CONDITION—VOID POLICY.

Section 5180, 2 Comp. Laws, providing that no policy of fire insurance shall be declared void for breach of condition, unless the loss occurred during the breach or by reason of the breach, does not apply to the breach of a condition against procuring additional insurance, where the loss occurred while the additional insurance was in force.

Error to Allegan; Padgham, J. Submitted February 3, 1904. (Docket No. 67.) Decided July 16, 1904.

Assumpsit by the A. M. Todd Company, Limited, against the Farmers' Mutual Fire-Insurance Company of

Allegan and Ottawa Counties on a policy of insurance. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error.   Affirmed.

*Howard & Howard*, for appellant.

*C. R. Wilkes*, for appellee.

Moore, C. J.   This is an action brought upon an insurance policy issued by the defendant to Albert M. Todd. Prior to the issuing of the policy in question, Mr. Todd held a policy in the company.   Mr. Todd wanted some additional insurance, and a new policy was issued, which is the policy in question.   On or about January 1, 1902, the plaintiff company was organized, and became the owner of the property covered by the insurance.   Albert M. Todd assigned his interest in said policy to it on the 13th day of January, 1902, and the same was approved by the secretary of the defendant company.   On the 10th day of July, 1902, a fire occurred, which destroyed the hay and grain and farm implements covered by the policy.   The hay and grain were insured for $500, live stock and farm implements for $2,100.   No live stock was injured by the fire.   On the back of the insurance policy in question are printed the by-laws and charter of the company.   Part of section 17 reads as follows:

"This entire policy, unless otherwise by an agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether void or not, on the property covered in whole or in part by this policy."

Mr. Todd later procured other insurance on the hay, grain, and farm products, but no indorsement was made thereof on the policy.   The circuit judge directed a verdict in favor of defendant.   The case is brought here by writ of error.

It is the contention of plaintiff that the provision against additional insurance was waived—*First*, by the consent thereto of the secretary of the company; *second*, by the

act of Mr. Dun, a solicitor of the defendant company, who procured the additional insurance; and, *third*, by making and collecting assessments of Mr. Todd after the additional insurance, and keeping the same. The first two of these claims is based upon Mr. Todd's testimony, which reads as follows:

" I built the large barn spoken of in 1900, after the policy of insurance involved in this case was issued. After I had it practically completed, Mr. Dun, the gentleman who acted for the defendant company in taking some of the increase insurance for said company as represented by the increase certificates attached to the policy in suit, came to see me, either by my appointment or his own suggestion, I cannot recall which. At any rate, he came with a view of insuring the barn. The barn had cost me $14,000 to build, and I wanted to get $10,000 of insurance on it. Mr. Dun said he did not think the company would take any such amount as that, because their policy was not to place too much in any one risk. I asked him to take it up with the company. He said he would, and would advise me how much they would take. He conferred with Mr. Hicks, the secretary of the company, and told me that the largest amount that the company thought that they could reasonably take would be $3,000. That they would insure either the barn or its contents, or both, to the amount of $3,000, but they did not wish to take more than $3,000 on any one piece of property. They had at that time a little over $18,000 on all the properties on my farm, and they were willing to take $3,000 more on this property. I told Mr. Dun that this would not be adequate, because it would be less than one-fourth the cost of the barn, and that we also had cattle we wanted to insure. We had something like 400 head of cattle, and also farm implements. Mr. Dun came afterwards, and said he had some talk with Mr. Hicks, and he was consulting with the Kent, Allegan & Ottawa Company to see if together they would take $5,000—that is, divide it so that each would take $2,500 apiece. I said that was all right. If they could arrange it to take an adequate amount, I would be glad to have them. But finally he advised me that that fell through for some reason or other; that it was not accomplished. So I telephoned to Mr. Hicks, and asked him if they really couldn't, in view of the fact of my other insur-

ance that I had already on many pieces of property, take more than $3,000. He said 'No;' that would be the limit that they could take on any one piece of property. I said, 'If that is the case, I will have to take out the insurance on the barn in stock companies.' He says, 'That is all right for you to do so, because we can't take more than $3,000.' So I said, 'All right, I will take it out in the stock companies,' and I told Mr. Dun about this, and he says, 'All right, I will write you up in the stock companies.' Mr. Dun was at that time solicitor for the defendant company. So I said 'All right, I would just as leave give you the insurance as anybody, if you will take it.' He says, 'I can write you up that in a stock company.' So I made out the application, and Mr. Dun arranged with me for insurance through Mr. Updyke's agency here in Allegan. We took out some insurance in the Updyke agency, some in Mr. Rankin's agency, and some in Mr. Garrett's agency; amounting in all to about $19,000.

"*Q.* What did you say to Mr. Hicks about wanting more insurance on the contents of the barn?

"*A.* Well, I said like this: That we ought to have probably $9,000 or $10,000 on the barn and $9,000 or $10,000 on the live stock, and perhaps $3,000 or $4,000 on the contents; and he said they could not insure it for so large an amount; that $3,000 was about all that they would insure it for. So I told him I would have to insure it in stock companies. I cannot recollect whether he suggested I insure it in stock companies or not, but, at any rate, he assented to it. In taking out the insurance in stock companies, I took out additional insurance on the hay, grain, and farm products. I took out the first insurance in stock companies September 28, 1900. These policies run for three years. Two policies taken out on that day. The next policy, I think, was taken out October 3, 1900. Each one of the stock companies had a certain amount on the barn, a certain amount on the hay, grain, and farm products, certain amounts on the cottage near by, and on some other property. The next insurance was taken out in stock companies January 15, 1901; March 3, 1901, March 22, 1901, March 25, 1901, June 4, 1901. That comprises them all. I took out ten policies in stock companies."

In the applications he made for insurance in the stock companies spoken of by Mr. Todd in his testimony, he answered certain questions in his own handwriting, and

to the question, "What amount of other insurance, if any, is there now on the property, and in what company or companies?" he answered, "None." Mr. Hicks' testimony as to his talk with Mr. Todd is as follows:

"During these negotiations I had a talk with Mr. Todd himself over the telephone. Mr. Todd called me over the phone. I answered, and talked with him regarding the $3,000. He suggested that was a very small amount, and asked me if in case we placed the $3,000, if that would permit him to place other insurance; and I told him our company could not accept concurrent insurance under any circumstances. That is the conversation Mr. Todd refers to. That ended the effort to get insurance in our company on the barn or its contents. Our company refused to take any insurance at all on the contents of the barn.  *  *  * Nothing was said by me to Mr. Todd that he had taken out, or was going to take out, additional insurance upon any property insured in our company. I never knew of it, or saw any intimation of it, until after the fire."

Putting the most favorable construction possible upon this testimony, we do not think the jury would be warranted in finding that Mr. Todd informed Mr. Hicks he wanted concurrent insurance upon property upon which he then had an insurance, and that Mr. Hicks consented that he might obtain it. This makes it unnecessary to express any opinion upon what would be the legal effect of Mr. Hicks' consenting to the proposed insurance.

Did what was done by Mr. Dun operate as a waiver? The record discloses that he was a soliciting agent, and had no authority to write policies. It is claimed he had acted in that capacity some time prior to December, 1897, the date of the policy in question, when some of the insurance was obtained under the old policy. His testimony is:

"My duties were to make a survey of the property, and submit applications for insurance to the secretary. I have no authority to write policies. That was all done by the secretary. I was merely a soliciting agent, as I understand it; agent for the secretary; and held my position at his pleasure, and made my reports to him. I knew of

Mr. Todd building the barn in 1900. At that time I knew that he was insured in the defendant company. I supposed he was because I had taken applications for him.

"*Q.* Did you at that time know anything about the amount of insurance, or what property was covered by his insurance in the defendant company?

"*A.* I knew what had been, but whether I did at that time or not I cannot recollect. I presume not, though, because my duties ceased usually when I took the application and submitted it and got the policy. I paid no attention to it afterwards."

There is no testimony in the case that his duties were other than as stated by him. He further testified that when the new barn was built Mr. Todd wanted $10,000 insurance on it, and, after taking the matter up with the company, they refused to accept it, and he so informed Mr. Todd. Mr. Dun obtained through Mr. Updyke's agency the insurance in the stock companies, and testified he did not understand the defendant company had any insurance upon the property covered by the policies of the stock companies. He said:

"Mr. Todd didn't directly or indirectly ask me for the consent of the Mutual Company for concurrent insurance upon the property that was insured by Mr. Updyke's agency. He never mentioned it to me, and I had no knowledge that it was property that this company had any insurance on. I first heard that Mr. Todd claimed the Mutual Company was carrying insurance upon the property that had been insured through the stock companies from the secretary, after the fire."

What we have said as to the effect of this testimony in relation to Mr. Hicks will apply equally to Mr. Dun. It is said, however, that as Mr. Dun obtained the insurance under the old policy, he must be presumed to know what it covered, and by obtaining the policies in the stock companies he thereby waived the provisions of the policy, and the company is bound thereby. It would be a violent presumption to suppose that Mr. Dun would know what property of Mr. Todd's was covered by insurance when the new insurance was taken because he had taken his appli-

137 MICH.—13.

cation as a soliciting agent and forwarded it to the company three or four years before. It would be carrying the doctrine of waiver further than we have ever seen it stated to say that, because a soliciting agent had taken and forwarded an application for insurance, and three or four years later had assisted in procuring insurance in other companies than the defendant company, about which act of the agent the defendant company had no knowledge, that these acts operated as a waiver. See 16 Am. & Eng. Enc. Law (2d Ed.), p. 944; *Goldin* v. *Assurance Co.*, 46 Minn. 471 (49 N. W. 246); *Queen Ins. Co.* v. *Young*, 86 Ala. 424 (5 South. 116, 11 Am. St. Rep. 51); *Sugg* v. *Insurance Co.*, 98 N. C. 143 (3 S. E. 732).

Was there a waiver because of collecting and retaining the assessments? Some of the policies in the stock companies were taken out as early as September, 1900; others in the summer of 1901. One assessment was collected in October, 1900, and one in October, 1901. We have already seen the company had no knowledge of the additional insurance until after the fire. No demand has ever been made for a return of the assessments which were paid, and the company has never refused to return them. The cases cited by counsel which he claims establish a waiver are, generally, cases where the assessments were collected after knowledge of the breach of the contract and before the loss occurred. In the others the case does not turn upon the matter of assessments. It has frequently been held by this court that the breach of such a condition as this renders the policy not voidable simply, but wholly void. See *Cronin* v. *Fire Ass'n*, 123 Mich. 277 (82 N. W. 45), and the many cases there cited. When this loss occurred the company had no knowledge of a breach of the policy, and, according to the cases just mentioned, at that time the policy was void. When the company learned of the additional insurance, it disclaimed any liability. The plaintiff has not been led to do any act or incur any expense because of what defendant has failed to do in relation to the assessments. The case of *Shelden* v.

*Insurance Co.*, 124 Mich. 303 (82 N. W. 1068), has some bearing upon the questions involved. See, also, *Boyer* v. *Insurance Co.*, 124 Mich. 455 (83 N. W. 124, 83 Am. St. Rep. 338). We do not think the failure to return the assessments operated as a waiver.

It is said, "We have a statute which we submit has a considerable bearing on this case," citing section 5180, 2 Comp. Laws. As this loss occurred during the breach of the condition in the policy, the statute does not help the plaintiff.

Judgment is affirmed.

The other Justices concurred.