BENHAM v. FARMERS' MUTUAL FIRE INSURANCE CO.

1. Insurance—Fire Policy—Contracts—Divisibility—Fraud—Incumbrances.

> A policy of fire insurance on buildings, stock, and other property, giving the separate amounts for which each item was insured, and covering the live stock anywhere in several counties named, is a divisible contract, which is good as to other property, but void as to real estate on which the insured

placed an incumbrance, in contravention of the conditions of the contract, and with reference to which he had made false statements in his application. Hooker and McAlvay, JJ., dissenting.

2. Same—Personal Property.

As to personal property contained in the dwelling house on said real estate, falsely represented to have brick or tile chimneys, the policy was also void.

Error to Grand Traverse; Davis, J., presiding. Submitted March 1, 1911. (Docket No. 119.) Decided May 8, 1911.

Assumpsit by George W. Benham against the Farmers' Mutual Fire Insurance Company of Charlevoix, Emmet, and Cheboygan counties, on a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed, unless plaintiff consents to remit a part of his judgment.

*Halstead & Halstead* and *Parm C. Gilbert*, for appellant.

*Pailthorp & Hackney*, for appellee.

Blair, J. This is an action upon an insurance policy insuring plaintiff—

"Against loss or damage by fire or lightning on the following described property, situate on section 32, in the township of Springvale, county of Emmet and State of Michigan:

| | |
|---|---:|
| " 'On log dwelling No. 1 | $100 |
| " 'On household furniture, bedding, wearing apparel and provisions therein | 210 |
| " 'On frame dwelling No. 2 | 60 |
| " 'On frame barn and log barns No. 1, $500, No. 2, $100, No. 3, $100 | 700 |
| " 'On hay, grain, wool and farm products, while in said barns or on said premises | 400 |
| " ' 'On live stock carriages, harnesses and farm tools, while in said barns or on said premises | 1,500 |
| " 'Pigpen | 70 |
| " 'On cow shed | 60 |
| " 'Total | $3,100 ' |

"Live stock insured against loss or damage by fire or lightning anywhere in Charlevoix, Emmet, and Cheboygan counties.

"The said company agrees: That it shall be held responsible, to make good and satisfy the assured, his heirs, executors, administrators, or assigns, all loss or damage by fire and lightning, to the property hereby insured, as specified in articles 4 and 13 of the charter of this company; provided, this insurance is equal to that amount. Provided also, this insurance shall not be liable for any loss or damage occasioned by the violation of any of the requirements as expressed, either in the application for insurance, the charter, by-laws, or rules and regulations of this company; and it is further mutually agreed, that in case the buildings hereby insured shall be used for other purposes than stated in the application for insurance, without the written consent of this company, whereby the risk is increased and rendered more hazardous, then this insurance shall not be liable for any loss or damage that may occur in consequence of such use.  *   *   *

"And it is hereby declared, and mutually agreed, between the assured and this company, that this policy of insurance is made and accepted, with special reference to the application for insurance, and all the conditions therein stated; the charter and by-laws of this company, or as may be amended hereafter, or as amended, since the application for insurance was first taken, and all the conditions hereto, or thereto annexed and appended, which form a part of this agreement and are to be resorted to, in order to settle, and explain the rights and obligations of the assured, and of this company, in all cases not herein specifically provided for."

By the terms of the application, such insurance was expressly made "subject to the conditions of the charter, by-laws and policies on the property specially described in this application and schedule." In the application, among other questions and answers, there appears the following:

"Q. Are your chimneys all secure?
"A. Yes."

Article 4 of defendant's charter provides, among other things:

"No dwelling shall be insured unless provided with suitable brick or tile chimneys."

In by-law No. 8 the following appears:

"This company may insure all farm buildings without special reference to the distance of each to the other, provided, all buildings in which fire is used shall be provided with good and safe tile and brick chimney," etc.

The policy of insurance contains the following clause:

"And it is hereby declared and mutually agreed between the assured and this company that this policy of insurance is made and accepted with special reference to the application for insurance, and all the conditions therein stated," etc.

The by-laws also provide:

"All applicants for insurance shall state the amount of incumbrance on the premises whereon the property to be insured is situated. * * * Should additional incumbrance be placed on said premises without the written consent of the secretary, such policy shall be void, and the company will not be liable for any loss under them," etc.

Plaintiff testified:

"*Q.* What kind of chimneys were actually on the buildings that were burned?
"*A.* They were mossback chimneys.
"*Q.* A stovepipe running up through the hole?
"*A.* Yes, sir; protected by iron.

Plaintiff also admitted that he placed $1,500 incumbrance on the real estate, "on the premises where the property insured was located," without the knowledge of the company. The total insurance was $3,100. The premium was all paid as one sum, not divided as to real estate and personal, nor in any other way. Plaintiff's declaration was upon the common counts, and specially upon the policy of insurance, and treats the policy as an entirety, claims damages $3,100, being in full of the face of the policy. Plaintiff filed a bill of particulars, stating

that he sued "to recover the value of all property described in the several counts of declaration," etc.

Defendant's plea gave special notice of the want of chimneys on the dwellings and of the placing of incumbrance on the premises contrary to the by-laws, application, and charter. In the trial court the defendant contended that there could be no recovery; that the policy was void. The court allowed plaintiff to recover for personal property, including that in log dwelling No. 1, but held the policy void as to real estate by reason of the incumbrance placed on the premises by plaintiff. In other words, the policy was held to be divisible, void in part, and valid as to other property. The burning of the property insured was caused by the spreading of forest fires to plaintiff's premises.

Defendant has brought the record to this court for review upon writ of error, challenging our attention to the following questions:

"(a) What is the effect upon this insurance of the misstatements contained in the application as to chimneys and incumbrance?

"(b) Was the entire policy rendered void by the assured placing incumbrance upon the premises unknown to defendant company?"

Since the court held the policy void as to the real property, we need only consider whether the contract was divisible. Was the contract divisible? We are of the opinion that it was. The author of Briefs on the Law of Insurance, at the close of his examination of the subject, states his conclusion as follows:

"Though in some jurisdictions the fact that the consideration for the policy is entire has led the courts to declare the contract entire, an examination of the cases justifies the statement that the rule established by the weight of authority is that, if the policy covers separate classes or items of property, separately valued and insured for separate amounts, the contract is divisible, and a breach of warranty or condition which affects only one of the classes or items covered will not avoid the insurance on the other

classes or items.  The fact that the policy contains a
declaration that the entire policy shall be void on a breach
of condition does not change the rule.   Reason and justice
require, however, that the rule should be modified when
the various classes of property are so situated in respect to
each other that the risk is substantially the same on all,
and in such case a breach of condition or warranty which
increases the risk on one class or item of the property
insured should forfeit the whole insurance." 2 Cooley's
Briefs on the Law of Insurance, p. 1925.

See, also, 19 Cyc. p. 674.  *Merrill* v. *Insurance Co.*,
73 N. Y. 452 (29 Am. Rep. 184), is very similar in its
facts to the case before us, and supports the ruling of the
circuit judge.   The case of *Ætna Ins. Co.* v. *Resh,* 44
Mich. 55 (6 N. W. 114, 38 Am. Rep. 228), does not con-
flict with our conclusion.   The facts of that case bring it
within the modification proposed by Mr. Cooley.

In the present case it was not contemplated that the
property should remain within the buildings insured
except as to the household furniture, etc., in log dwelling
No. 1.  The other personal property was insured any-
where on the premises, and the live stock "anywhere in
Charlevoix, Emmet, and Cheboygan counties."  It was
error, however, to authorize the inclusion of the personal
property in log dwelling No. 1 in the verdict, and for this
error the judgment must be reversed, unless the plaintiff
shall remit the amount thereof within 30 days, in which
event the judgment will be affirmed for the remainder.

OSTRANDER, C. J., and MOORE, BROOKE, and STONE,
JJ., concurred with BLAIR, J.

HOOKER, J.  I am of the opinion that the plaintiff's
breach of warranty is fatal to his case.  2 Comp. Laws,
§ 5180, does not relieve him, if it can be said to be applica-
ble to a breach of warranty in any case (see *Shelden* v. *In-
surance Company*, 124 Mich. 303 [82 N. W. 1068]), for
the reason that the fire occurred during the continuance
of the defective condition.  This statute has been held
not to relieve an insured person where the breach of con-

dition extended to the time of the fire in *Boyer* v. *Insurance Co.*, 124 Mich. 461 (83 N. W. 124, 83 Am. St. Rep. 338); *A. M. Todd Co.* v. *Insurance Co.*, 137 Mich. 188 (100 N. W. 442); *King* v. *Insurance Co.*, 140 Mich. 266 (103 N. W. 616). The fact that the misrepresentation was innocent does not relieve the plaintiff from the consequences of the misrepresentation. The defendant could not have insured the dwelling under its articles and by-laws had the truth been stated, and the falsity of the representation avoided the policy under section 19, under which it was sufficient if the answer was false, whether it was fraudulent or not. It is said that we may hold this policy void as to the building, and not void as to the personal property. If that were so, in my opinion the doctrine should not be carried so far as to apply it to the contents of a building whose condition is such as to make the policy void. It is incredible that the parties could have intended or supposed that the policy would be void as to the building and not as to its contents.

But, as some of the personal property was not in dwelling No. 1, either when the fire occurred or when the policy was written, we must examine the case further. We held in *Shelden* v. *Insurance Co.*, 124 Mich. 303 (82 N. W. 1068), that the statute (sections 5150, 5182, 5187) had no application to a breach of warranty, which was involved in this case. See, also, *McGannon* v. *Insurance Co.*, 127 Mich. 650 (87 N. W. 61, 54 L. R. A. 739, 89 Am. St. Rep. 501), for discussion of warranty. I consider this point conclusive unless the doctrine of divisibility is applicable to the case. There is another reason why they have no application. Were we to say that only a condition was violated, inasmuch as the breach continued up to and including the time of the fire, the case does not come within the statute. *Niles* v. *Insurance Co.*, 119 Mich. 252 (77 N. W. 933); *Cronin* v. *Fire Association*, 123 Mich. 277 (82 N. W. 45); *Shelden* v. *Insurance Co.*, 124 Mich. 303 (82 N. W. 1068) ; *Boyer* v. *Insurance Co.*, 124 Mich. 455 (83 N. W. 124, 83 Am. St. Rep. 338); *McGan-*

*non* v. *Insurance Co.*, 127 Mich. 637 (87 N. W. 61, 54 L. R. A. 739, 89 Am. St. Rep. 501); *A. M. Todd Co.* v. *Insurance Co.*, 137 Mich. 188, 194 (100 N. W. 442); *King* v. *Insurance Co.*, 140 Mich. 266 (103 N. W. 616); *Brunswick-Balke-Collender Co.* v. *Assurance Co.*, 150 Mich. 315 (113 N. W. 1113).

Since writing the foregoing, my Brother BLAIR and I have been able to agree so far as dwelling house No. 1 and its contents are concerned, but, in view of his conclusions regarding other property destroyed and the application of the doctrine of divisibility of the insurance contract to this case, I feel constrained to discuss that question, both for its effect on this cause and, in my opinion, its introduction of a new rule in this State. I am aware that it is no new thing for courts to apply different rules of construction to insurance contracts than are applied to other contracts. So far as such have become the established law of this State, we should certainly follow them, otherwise we should be sufficiently deliberate to be sure that such decisions are well grounded. The exact facts in this case are that this plaintiff procured insurance upon two frame dwellings, one frame barn, one or more log barns, one cow shed, and one pigpen, household furniture in dwelling No. 1, hay and other products, live stock, carriages, etc., in the barns or on the premises, each in separate amounts. Plaintiff claimed the right to recover the entire amount of the policy. In his application he answered "Yes" to the question, "Are your chimneys secure?" By the terms of the application, the insurance was to issue "subject to the charter, by-laws and policies on the property specially described in this application and schedule." In by-law 8 the following appears:

"This company may insure all farm buildings without special reference to the distance of each to the other, provided, all buildings in which fire is used shall be provided with good and safe tile and brick chimney," etc.

The policy states:

"And it is hereby declared and mutually agreed between the assured and this company, that this policy of insurance is made and accepted with special reference to the application for insurance, and all the conditions therein stated," etc.

The by-laws also provide:

"All applicants for insurance shall state the amount of incumbrance on the premises whereon the property to be insured is situated. * * * Should additional incumbrance be placed on said premises without the written consent of the secretary, such policy shall be void, and the company will not be liable for any loss under them," etc.

There were no brick or tile chimneys at the time the policy was procured, nor have there been such at any time since—merely stovepipes through the roof.

It is conceded that an additional incumbrance of $1,500 has been placed on the real estate since, and was in force at the time of the fire without the necessary consent. The learned circuit judge held the incumbrance to be a fatal obstacle to recovery for damage to the real estate, but permitted recovery for destruction of the personal property wherever situate. We agree that no recovery can be had for injury to the real property or personal property burned in the farm dwelling. We do not agree upon the subject of the other personal property. I assume that the breach of warranty as to the chimneys is the ground upon which we agree as to the personal property destroyed in dwelling 1, for, if the contract is divisible upon the ground that the incumbrance is upon the realty merely, this household property would be protected because not covered by the incumbrance. I also think myself warranted in understanding that the claim to the application of the doctrine of divisibility of the contract as regards the personal property is based on the idea that only that portion in dwelling 1 would be affected by this warranty as to chimneys. It has been truly said that there is a want of harmony in the cases upon the question of divisibility of the contract.

We are not without some light on this question from our own cases. See *Ætna Ins. Co.* v. *Resh,* 40 Mich. 241; *Id.,* 44 Mich. 55 (6 N. W. 114, 38 Am. Rep. 228). This doctrine seems to rest upon, and to be limited in its application to, cases where it is reasonably certain that the parties intended that the contract should be divisible, and while Mr. Justice Marston, apparently out of abundant caution, in view of the want of harmony, which he mentioned, said "there may be cases where the contract would be divisible," he also said that "the case should be clear and free from all reasonable doubt to warrant a court in carving out separate and distinct contracts from one common whole." Again, as Mr. Roger Cooley says in his Briefs on the Law of Insurance, Vol. 2, p. 1898, "it is, of course, conceded that the rule "—*i. e.,* of divisibility— "may be rendered inapplicable by special provisions of the policy"—citing *Smith* v. *Insurance Co.,* 118 N. Y. 518 (23 N. E. 883), where a policy declared that it should be void if the property insured or any part thereof be incumbered, and it was held that the doctrine of divisibility would not apply.

Our case is similar. The provision here is that:

"Should additional incumbrance be placed on said premises without the written consent of the secretary, such policy shall be void."

How can it be said that this meant that only a part of the policy should be void without doing violence to the explicit agreement of the parties to the contrary? Again, by-law 19 provides:

"False Statements. Sec. 19. Any applicant who shall falsely or fraudulently answer any of the questions contained in the application, or who shall make any false or fraudulent representations regarding his losses in case of fire, shall thereby forfeit all his rights under his policy."

Is there a legitimate distinction between a provision that a policy should be void "if the property insured or any part thereof be incumbered," and a provision that

" any applicant who shall falsely or fraudulently answer any of the questions contained in the application or who shall make any false or fraudulent representations regarding his losses in case of fire, shall thereby forfeit all his rights under his policy"? Mr. Cooley's conclusions do not seem to be in accord with those of some others as to the better rule. Thus 19 Cyc. p. 682, states the following:

"A warranty must be literally complied with, and an unimportant breach will avoid the policy. The falsity of a statement or representation which is directly or impliedly affirmed in the policy itself or by reference to some preliminary or collateral statement renders the policy void from the beginning, or, if the statement is promissory, from the time of the breach."

A discussion of this question of divisibility, in which a cloud of cases are cited and discussed, is to be found in *Southern Fire Ins. Co.* v. *Knight*, 111 Ga. 622 (36 S. E. 821, 52 L. R. A. 70, 78 Am. St. Rep. 216), from which we quote:

"The policy sued on in the present case insured both the stock of goods and the building in which it was contained. The premium due upon the policy was a gross sum. The question arises, therefore, whether the breach of a warranty relating solely to the goods, and which precluded a recovery for their loss, would also bar a recovery for loss of the building. The stipulation prescribing that the insured must take an inventory of his stock provides that, in case of failure so to do, 'this policy shall be null and void.' What was the intention of the parties with respect to the question just above stated? If this intention is to be derived from the language used—and it must be—it would seem to be clear that the contract was entire and indivisible, and that the breach of a condition which would work a forfeiture would avoid the entire policy, and not simply a portion thereof. The parties contracted that 'the policy' should be void in case of failure to comply with the iron-safe clause. The policy embraces insurance upon both the building and its contents, and the premium is payable in a gross sum.

" 'If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the con-

tract may consist of several distinct and wholly independent items.' 2 Parsons on Contracts, p. *519

" It was competent for the parties to make two separate and distinct contracts—one covering the goods, and the other the building—but they did not see proper to do this. They combined the two, and made the consideration moving towards the insurer a gross sum. They further provided that the contract—not a part of it—should be void under certain conditions It may perhaps seem to be unreasonable that simply for a failure to take an inventory of the stock of goods the plaintiffs should be precluded from recovering the value of the building. But this does not affect the question. The question is, What have they agreed upon? If there was any room to doubt as to the intention of the parties, that construction which is most reasonable and most consonant with justice would be applied. But there is none. The parties have deliberately chosen to enter into an agreement whereby the policy shall be forfeited if the insured fails to do certain things, and he has failed to comply with this agreement. In such a case there is but one thing for the courts to do, and that is to enforce the agreement as made.

" The question as to whether a policy of insurance such as is involved in the present case constitutes a separable or an entire contract is no new question. It has been the subject of numerous decisions by the courts in this country, and they are in hopeless and irreconcilable conflict. The weight of authority is to the effect that the contract is entire, and that the breach of a warranty which relates solely to one class of property will avoid the entire policy if the contract so provides. Text-writers of great learning and ability have, after reviewing the decisions on both sides of this question, reached the conclusion that the contract is indivisible. We quote the following from 1 Wood, on Fire Insurance, p. 384:

" 'It is difficult to understand how it can be held that these contracts are several, when a gross premium is paid for the entire insurance. The court cannot say, as a matter of law, neither can the fact be shown, that the insurer would have been satisfied to take the risk separately at the same premium. By consenting to pay a gross premium for the insurance the assured has signified his willingness to let the policy stand as an entire contract, subject in all its parts to the conditions imposed by the insurer; and there is .

neither reason nor equity in preventing [?] the assured, after he has violated one of the conditions of the policy as to a part of the risk, to turn around and say that this condition only affected that portion of the risk to which the breach related.'

"Mr. Ostrander, after an elaborate review of the decisions, reaches the conclusion that those which hold the contract to be entire announce the sounder and better rule. Ostrander, Fire Ins. § 23 *et seq.* See, also, 2 Joyce, Ins. § 1931; 1 May, Ins. § 277. In support of the views herein announced, we find the courts of last resort of Maine, Wisconsin, Maryland, Minnesota, Virginia, New Hampshire, Massachusetts, Vermont, Pennsylvania, New Jersey, Michigan, Indiana, Arkansas, Iowa, Alabama, and Connecticut. It would not be profitable here to do more than cite the decisions of these courts. Reduced to their last analyses, they simply hold that the premium being for a gross sum evidences an intention on the part of the parties that the contract should be treated as entire, and that the intention of the parties, when ascertained, must be enforced. See *Richardson* v. *Insurance Co.*, 46 Me. 394 (74 Am. Dec. 459); *Barnes* v. *Insurance Co.*, 51 Me. 110 (81 Am. Dec. 562); *Hinman* v. *Insurance Co.*, 36 Wis. 159 (Syl. point 7); *Burr* v. *Insurance Co.*, 84 Wis. 76 (54 N. W. 22, 36 Am. St. Rep. 905); *Associated Firemen's Ins. Co.* v. *Assum*, 5 Md. 165; *Bowman* v. *Insurance Co.*, 40 Md. 620; *Plath* v. *Insurance Association*, 23 Minn. 479 (23 Am. Rep. 697); *Moore* v. *Insurance Co.*, 28 Grat. (Va.) 508 (26 Am. Rep. 373); *Baldwin* v. *Insurance Co.*, 60 N. H. 422 (49 Am. Rep. 324); *Friesmuth* v. *Insurance Co.*, 10 Cush. (Mass.) 587; *Lee* v. *Insurance Co.*, 3 Gray (Mass.), 583; *Kimball* v. *Insurance Co.*, 8 Gray (Mass.), 33; *McGowan* v. *Insurance Co.*, 54 Vt. 211 (41 Am. Rep. 843); *Gottsman* v. *Insurance Co.*, 56 Pa. St. 210 (94 Am. Dec. 55); *Fire Ass'n of Philadelphia* v. *Williamson*, 26 Pa. St. 196; *Martin* v. *Insurance Co.*, 57 N. J. Law, 623 (31 Atl. 213); *Ætna Ins. Co.* v. *Resh*, 44 Mich. 55 (6 N. W. 114, 38 Am. Rep. 228); *McQueeny* v. *Insurance Co.*, 52 Ark. 257 (12 S. W. 498, 5 L. R. A. 744, 20 Am. St. Rep. 179); *Garver* v. *Insurance Co.*, 69 Iowa, 202 (28 N. W. 555); *Western Assurance Co.* v. *Stoddard*, 88 Ala. 606 (7 South. 379 [Syl. point 5]); *Essex Sav. Bank* v. *Insurance Co.*, 57 Conn. 335 (17 Atl. 930, 18 Atl. 324, 4 L. R. A. 759). It is true that none of the cases above cited dealt with a breach of the

iron-safe clause, but in many of them the condition in the policy which was violated had no more connection with the property for which a recovery was sought than does the iron-safe clause to the building insured by the policy herein involved.   In principle the cases are exactly in point.   Opposed to this view are decisions of the courts of last resort of Nebraska, Colorado, Kansas, and Missouri. See *State Ins. Co.* v. *Schreck,* 27 Neb. 527 (43 N. W. 340, 6 L. R. A. 524, 20 Am. St. Rep. 696); *German Ins. Co.* v. *Fairbank,* 32 Neb. 750 (49 N.. W. 711); *Fireman's Fund Ins. Co.* v. *Barker,* 6 Colo. App. 535 (41 Pac. 513); *German Ins. Co.* v. *York,* 48 Kan. 488 (29 Pac. 586, 30 Am. St. Rep. 313); *Kansas Farmers' Fire Ins. Co.* v. *Saindon,* 53 Kan. 623 (36 Pac. 983); *Loehner* v. *Insurance Co.,* 17 Mo. 247; *Trabue* v. *Insurance Co.,* 121 Mo. 75 (25 S. W. 848, 23 L. R. A. 719, 42 Am. St. Rep. 523).   The courts of New York and Indiana seem to have been at different times on both sides of the question now under consideration.   *Smith* v. *Insurance Co.,* 25 Barb. (N. Y.) 497; *Kiernan* v. *Insurance Co.,* 81 Hun (N. Y.), 373 (30 N. Y. Supp. 892); *Merrill* v. *Insurance Co.,* 73 N. Y. 452 (29 Am. Rep. 184); *Pratt* v. *Insurance Co.,* 130 N. Y. 206 (29 N. E. 117); *Havens* v. *Insurance Co.,* 111 Ind. 90 (12 N. E. 137, 60 Am. Rep. 689); *Phenix Ins. Co.* v. *Pickel,* 119 Ind. 155 (21 N. E. 546, 12 Am. St. Rep. 393)."

Our own case above cited is exactly in point.   Mr. Justice Cobb concludes a learned and convincing opinion as follows:

"Our conclusion is, that where an insurance policy is issued in consideration of a gross premium, and provides that the policy shall be void in the event of a breach of a certain condition therein named, and this condition is broken, no recovery can be had on the policy, though separate classes of property are therein insured, and though the stipulation violated relates solely to a matter which could have connection with but one of these classes."

And after all, when a policy provides that a breach of warranty shall render the policy void, what necessity or justification can there be for splitting-hairs to make it a different contract than its unmistakable and unequivocal language clearly imports, thereby making a new contract

for the parties, and especially can this be said in a case where, as in this, the parties have expressly said in writing that the entire policy shall be void. Will we apply the general rule of construction that a contract should be so construed as to give effect to all its language if it can be consistently done? And, if not, why not? What reason can be given for eliminating that word "all" from the contract? Indeed, the only reason for putting it in would seem to be to make assurance doubly sure, for ordinarily a provision that a written contract should be void would be construed to mean the entire contract. That is the natural and popular meaning which our statute (1 Comp. Laws, § 50) says shall be the rule of construction as to statutes. Why not as to contracts? It would be difficult to suggest language that could safely be relied on to express such intent if that used here does not.

For the reasons above given, I am of the opinion that the judgment should be reversed with costs of both courts and without a new trial; it being apparent that the plaintiff cannot recover a verdict on this policy.

McAlvay, J., concurred with Hooker, J.