RAUCH *v.* MICHIGAN MILLERS' MUTUAL FIRE-INSURANCE
CO.

1. ADDITIONAL INSURANCE—ESTOPPEL.
   Where a policy holder writes the insurer that he has taken
   out additional insurance, that his policy issued by it is in a
   certain bank, and that he does not remember its conditions,
   and says, "If there is anything that conflicts with your
   policy, please advise me," the insurer, receiving the letter and
   not answering it, is estopped to claim that its policy is avoided
   by additional insurance, whether taken out before or after
   the writing of the letter. GRANT, J., dissenting.

2. LETTERS — MAILING — RECEIPT — PRESUMPTION — QUESTION FOR
   JURY.
   A letter shown to have been properly addressed, stamped, and
   mailed is presumed to have been delivered; and, while such
   presumption is not conclusive, a denial of its receipt is none
   the more so, but makes the question one for the jury.

3. ESTOPPEL—FUTURE TRANSACTIONS.
   An estoppel cannot be based upon future transactions, unless
   the party against whom the estoppel is sought to be enforced
   was informed that such things would be done. Per GRANT, J.

Error to Eaton; Smith, J.   Submitted April 10, 1902.
(Docket No. 70.)   Decided June 27, 1902.

*Assumpsit* by Henry S. Rauch against the Michigan
Millers' Mutual Fire-Insurance Company on a policy of
insurance.   From a judgment for plaintiff, defendant
brings error.   Affirmed.

*Crane, Norris & Drew,* for appellant.

*Lyman H. McCall* and *J. M. C. Smith,* for appellee.

GRANT, J. *(dissenting).* Plaintiff recovered verdict
and judgment upon a policy of insurance for a loss by fire.
The policy was dated August 3, 1899.   In his application
were the following question and answer: "What will be

the total insurance on the buildings, machinery, boiler, and engine? *Answer.* Two thousand five hundred dollars." The application further stated:

"The undersigned applicant hereby warrants that the above is a just, full, and true exposition of the facts and circumstances in regard to the property to be insured, and is and shall be considered as the basis on which insurance is to be effected and continued in force, and the same is understood as incorporated in and forming a part and parcel of the policy as a continuing warranty during the life of such policy."

The policy was of the Michigan standard, and contained the following provisions:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof. * * *
"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

Plaintiff was permitted to testify to conversations between the defendant's solicitor, who took the policy, and himself, as follows:

"I wanted the policy fixed so that I could take other concurrent insurance on it,—on the entire plant throughout, any place, on the building or machinery, stock, engine room, boiler, and so forth. He said that would be all right. He said it would be perfectly satisfactory with them, and they would fix the policy so that I could. * * * After he read it over again, I again called his attention to the policy being fixed so that I could take out other concurrent insurance; that after I got the mill going I intended to take out more insurance on it than I had at the present time,—after the mill was completed and in operation. He agreed to that, and said it would be perfectly satisfactory to the company, and they would fix my policy so that I could."

Plaintiff was also permitted to testify that in December, 1900, he met defendant's solicitor at Albion, and told him

that he had taken out another policy, and that the solicitor said:

" ' You can carry more than that on all your stock.' * * * He said I could take out more insurance, and I told him I wasn't able to at present; that perhaps after awhile I would give him some more insurance."

On September 28, 1899, plaintiff took out additional insurance in the Michigan Manufacturers' Mutual Fire-Insurance Company of Bay City, for $1,000. Plaintiff further testified that on January 15, 1900, he wrote and mailed a letter to the defendant, which reads as follows:

" *Gentlemen:* I thought perhaps it would be advisable to inform you that I have taken out more insurance on the stock in process, grain, machinery, and on the mill building. Not just remembering the conditions of your policy, as the bank at Charlotte holds the same, if there is anything that conflicts with your policy, please advise me."

Defendant denied receiving such a letter.

On February 7, 1901, plaintiff secured additional insurance to the amount of $1,500 in the Detroit Fire & Marine Insurance Company, upon the same property, without the knowledge or assent of the defendant. Of this policy, defendant had no notice or knowledge until after the fire.

The court instructed the jury that the plaintiff was bound by the contract; that he had the opportunity to examine it, and was chargeable with knowledge of its contents; that all previous oral negotiations are contained in the writing, and bind both parties; that plaintiff was therefore precluded from claiming that the contract was not in accordance with the oral agreement; and instructed the jury to disregard the testimony of the conversations between the plaintiff and the defendant's solicitor. He also instructed them that they must disregard the testimony in regard to the conversation which plaintiff testified he had with defendant's solicitor at Albion, after the policy of insurance was issued, and that that conversation in regard to other insurance did not bind the defendant. Only one question was left to the jury, viz., was the

letter of January 15, 1900, written and mailed by the plaintiff and received by the defendant? The court instructed them that, if they found that such a letter was mailed and received, the defendant was estopped from denying its liability on account of the policy subsequently issued. There was no dispute on the amount of the loss.

1. The question of whether the letter of January 15th was written, mailed, and received was a question of fact to be determined by the jury, in the light of all the surrounding circumstances. If mailed, the presumption is that the postoffice officials performed their duty, and that the letter was delivered. The defendant could rebut this by evidence that it did not receive the letter. The testimony of neither party makes a conclusive case, but one of doubt for the jury to solve. It was not a question for the court. *Rosenthal* v. *Walker*, 111 U. S. 185 (4 Sup. Ct. 382), and authorities there cited.

2. The instruction of the court as to the binding force of this policy upon the plaintiff was correct. *Cleaver* v. *Insurance Co.*, 65 Mich. 527 (32 N. W. 660, 8 Am. St. Rep. 908); *Gould* v. *Insurance Co.*, 90 Mich. 308 (52 N. W. 754); *Wierengo* v. *Insurance Co.*, 98 Mich. 621 (57 N. W. 833); *Ranspach* v. *Insurance Co.*, 109 Mich. 699 (67 N. W. 967). Did the letter of January 15th waive this provision of the policy, and authorize the plaintiff to thereafter secure additional insurance *ad libitum?* The provisions of the policy were perfectly plain. Plaintiff did not need to write to defendant asking for its conditions. It was in his control at the bank, where he could read it for himself. The letter did not ask for permission to get other additional insurance, or notify defendant that plaintiff intended to do so. It referred solely to the fact that he had taken out more insurance. Whether the failure to reply would estop the defendant as to the prior policy, we need not determine. I think it clear that it did not authorize the plaintiff to get other insurance in the future, or estop the defendant from avoiding the policy if he did so without the assent of the defendant. *Allemania Ins.*

*Co.* v. *Hurd*, 37 Mich. 11 (26 Am. Rep. 491). Estoppel cannot be based upon unknown facts, or upon future transactions, unless the party against whom the estoppel is sought to be enforced was informed that such things would be done.

3. It follows, from what has been said, that the court erred in admitting in evidence the conversation preceding the issue of the policy or contemporaneous with it. *Northern Assur. Co.* v. *Grand View Bldg. Ass'n*, 183 U. S. 308 (22 Sup. Ct. 133), where the decisions upon this point are reviewed. It also follows that the conversation between plaintiff and the defendant's solicitor, after the issue of the policy, was incompetent.

4. In view of a new trial, it is proper to state that it was not competent to prove that no premium had been returned by the defendant. This is not a case for the application of the doctrine that the receipt and retention of premiums are of force in determining the liability of the defendant. It was under no obligation to return any of the premiums.

Judgment should be reversed, and new trial ordered.

MOORE, J. In reference to the letter of January 15, 1900, the circuit judge charged the jury as follows:

"That leaves just one question, and it is the important one. The material or controlling question in the case, in my judgment, is as. to whether the company is estopped from denying liability because of other insurance taken out by Mr. Rauch without its permission indorsed on the policy.

"Parties are sometimes estopped by their conduct; that is to say, if, having knowledge of the fact, a party remains silent, and permits another interested to do certain things which he would not have done had he spoken, he is estopped from asserting that such an act is a defense on his part. Take this case, gentlemen: The plaintiff claims he wrote a letter January 15, 1900, to the defendant, in substance that he had taken out other insurance on the property in question, and stating to the company in this letter that his policy was at the bank at Charlotte; that he did not remember its conditions; and closes the letter by saying, 'If·there is anything that conflicts with

your policy, please advise me.' If he wrote this letter, and it was received by the company, the company would be in duty bound to reply to it, and give to plaintiff its decision regarding the information referred to in the letter; and, if it did not do so, plaintiff might as well think he would have the right to take out other insurance, and, if he did so, the company could not defend. against the policy on that ground in case there was a loss.

"And so, gentlemen, I instruct you that if you find, by a fair preponderance of the evidence, that the plaintiff wrote a letter to the company January 15, 1900, of which that read from the letter-press book is a copy, and mailed the same in an envelope, with his return card thereon, as testified to by him, and the same was properly stamped, and addressed to the insurance company at Lansing, Michigan, and mailed by plaintiff in the postoffice at Vermontville, Michigan, that the presumption of law is that such letter was received by the defendant in the due course of mails. The defendant claims it never received this letter, and the question, gentlemen, for you to determine in the case, is whether or not such letter was received by the defendant, the insurance company. And I instruct you that, if you find that defendant company received the letter claimed to have been written by Mr. Rauch, it was the duty of the company, upon receipt of such letter, to cancel the policy in suit, or reply to the inquiry therein made, which is substantially a request to know whether or not additional insurance was permitted under the policy in suit, which had been delivered to the bank in conformity to the rider placed thereon by the defendant company; and a failure to so notify Mr. Rauch, or to answer his letter, was a waiver on the part of the company of any of the terms of the policy prohibiting additional insurance, and the defendant is now estopped from claiming such forfeiture on account of any and all additional insurance, either on the property at the time of the receipt of such letter, or subsequently placed thereon by Mr. Rauch, if you find it was received; the law being, if a party, by his silence, directly leads another to his injury, he will not be permitted, after his injury has happened, to then allege anything to the contrary. The sole question in this case which will give you any trouble will be, was this letter written, properly addressed and stamped, and duly mailed, and did it reach defendant's office by due course of mail? The burden of proof is with the plaintiff to satisfy you, by

a fair preponderance of the evidence, of the claim he makes, and this applies, of course, to the question as to the receipt of this letter by the company.   If you find, by a fair preponderance of evidence, that the letter was received by the. company, then the plaintiff should have your verdict for $3,078.75.   If you find defendant did not receive this letter, then your verdict should be for the defendant, no cause of action."

It is evident that, under the instruction of the court, the jury could not have rendered the verdict they did without finding as a fact the letter was sent and received as claimed by plaintiff.   If plaintiff advised the defendant he had taken out additional insurance, and that the policy was not where he could refer to it, and requested the company, if the taking of the additional insurance conflicted with the terms of the policy, to advise him, it became the duty of the company to inform the plaintiff if it did conflict.   The company could not remain silent until after a loss, retaining the premium paid, and then claim the policy was void.   There is no contest about the amount of the loss or the cause of the fire.   The defense is a technical one, and ought not to prevail if the facts are as found by the jury.

The judgment should be affirmed.

HOOKER, C. J., and MONTGOMERY, J., concurred with MOORE, J.

LONG, J., did not sit.