MOORE v FIRST SECURITY CASUALTY COMPANY

Docket No. 187115. Submitted April 8, 1997, at Detroit. Decided June 27, 1997, at 9:25 A.M.

Lilly Moore, individually and as next friend of minors Rebecca and Timothy Moore, brought an action in the Macomb Circuit Court against First Security Casualty Company, seeking underinsured motorist benefits for bodily injury under an automobile insurance policy. The court, Raymond R. Cashen, J., granted summary disposition for the defendant, ruling that coverage was excluded pursuant to a policy clause providing that coverage did not apply if a cause of action against the underinsured motorist was settled without the defendant's consent. The plaintiffs had brought an action against the underinsured motorist, reached a settlement, informed the defendant of the settlement, executed releases in favor of the underinsured motorist, and sent copies of the releases for the defendant's review five days before Memorial Day in 1994, informing the defendant that if they did not hear from the defendant in writing by Memorial Day, they would assume that the defendant had no objections to the releases. The defendant had received the releases on the day after Memorial Day, the same day on which consent judgments were entered in the plaintiffs' action against the underinsured motorist. The plaintiffs appealed.

The Court of Appeals *held*:

An insurer may waive its right to insist upon forfeiture for breach of a policy provision by virtue of having induced the insured, by silence, to believe that no objection will be made; the insurer must fail to object within a reasonable time after notice, and the inaction of the insurer must continue over a sufficient period to be significant. In this case, rational minds cannot disagree that the defendant was not allowed a reasonable time to respond to the submitted releases in favor of the underinsured motorist. Accordingly, the trial court properly granted the defendant's motion for summary disposition under MCR 2.116(C)(10).

Affirmed.

MURPHY, J., dissenting, stated that summary disposition should not have been granted because there existed a genuine issue of material fact upon which reasonable minds could differ concerning

whether the defendant's failure to respond induced the plaintiffs to believe that the settlement and the releases had been approved by the defendant. The issue should have been decided by the jury.

INSURANCE — INSURED'S BREACH OF POLICY — DENIAL OF COVERAGE — EQUITABLE ESTOPPEL.

An insurer may be equitably estopped from denying coverage to an insured for breach by the insured of a provision of the policy where the insurer fails to object to the breach within a reasonable time of notice of the breach; the question whether an insurer has been allowed a reasonable time to respond after notice of a breach is one for the trial court where reasonable minds cannot differ concerning whether the insurer has or has not been allowed sufficient time in which to respond and one for the jury where reasonable minds can differ.

*Barry F. LaKritz*, for the plaintiffs.

*Welch, MacAlpine, Bahorski, Bieglecki & Farrell, P.C.* (by *Terry S. Welch*), for the defendant.

Before: SAWYER, P.J., and MURPHY and CAVANAGH, JJ.

CAVANAGH, J. Plaintiffs appeal as of right the trial court order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

Plaintiffs in this case are Lilly Moore and her minor children, Rebecca Moore and Timothy Moore. On January 15, 1994, plaintiffs were injured in an automobile accident. Lilly Moore and Rebecca Moore each suffered a concussion and an ankle fracture, while Timothy Moore sustained bruised ribs. The driver of the other vehicle, Brian Cooper, was traveling in a pickup truck owned by his mother, Mary Cooper. The insurance policy on the pickup truck limited coverage to $20,000/$40,000.

Plaintiffs' vehicle was covered by a no-fault policy issued by defendant First Security Casualty Company. Plaintiffs' policy provided for underinsured motorist coverage, intended for situations in which a negligent

tortfeasor's policy limits are inadequate to fully com-
pensate plaintiffs for their losses. The portion of
defendant's policy pertaining to underinsured motor-
ist coverage contains the following provision:

> EXCLUSIONS: BODILY INJURY NOT COVERED: This coverage does
> not apply to bodily injuries sustained by an injured party if
> the resulting cause of action is settled or prosecuted with-
> out our consent.

On April 29, 1994, plaintiffs' attorney wrote a letter
to defendant advising it of plaintiffs' intent to file an
underinsured motorist claim. In response, defendant's
claims adjuster, Wendy Rusnell, called plaintiffs'
attorney, who advised her of a proposed settlement in
which Lilly Moore would be paid $18,000, Rebecca
Moore $17,000, and Timothy Moore $5,000. According
to the affidavit of plaintiffs' attorney, he also
informed Rusnell that the Coopers had no assets
beyond the policy limits provided by their no-fault
insurer. On May 17, 1994, Rusnell wrote a letter to
plaintiffs' attorney stating that "we need to review the
Release prior to our insured signing it in order to
insure that our rights to subrogate have not been
jeopardized."

On May 24, 1994, Lilly Moore signed the releases. A
consent judgment for the purpose of obtaining judi-
cial approval of the settlement of the claims of the
minor plaintiffs, pursuant to MCR 2.420, was sched-
uled for May 31, 1994. On May 25, 1994, plaintiffs'
counsel sent defendant a letter with the releases
enclosed. The letter stated in pertinent part:

> Please be advised that Consent Judgments are due to be
> entered by the Court on May 31, 1994. Unless I hear from

you in writing by May 30, 1994, at 2:00 P.M., I will assume
you have no objections to the Releases being signed.

In his affidavit, plaintiffs' counsel stated that he also
faxed a copy of the letter to defendant.[1] Defendant
denies receiving a facsimile of the letter and notes
that plaintiffs have failed to supply a facsimile trans-
mission sheet or a report from the fax machine show-
ing that the fax was sent.

On May 31, 1994, the trial court approved the pro-
posed settlement for the minor plaintiffs. Thereafter,
plaintiffs' counsel tendered the releases to the
Coopers' insurance company.

Because of the intervening Memorial Day holiday,[2]
defendant did not receive the May 25, 1994, letter
from plaintiffs' attorney until May 31, 1994, the date
of the consent judgment hearing. In a letter dated
June 15, 1994, Rusnell, after noting that counsel's let-
ter of May 25 had not been received until May 31,
stated:

> We have reviewed our file and as per my letter to you
> dated, May 17, 1994, in which I advised you that we need to
> review any and all Releases prior to our insured signing, to
> insure [sic] that our subrogation rights will not be jeopard-
> ized. We will not approve the Releases that you've sent, we
> will have our legal counsel review them for approval. Also,
> we will want to verify if the Coopers' [sic] are collectable or

---

[1] In his affidavit, plaintiffs' attorney stated that "upon receipt of Defend-
ant's correspondence of May 17, 1994, my office immediately forwarded a
letter to Defendant's adjuster *via fax and regular mail*, enclosing the
Releases." Notably, the affidavit does not specify the exact date upon
which plaintiffs' attorney allegedly faxed the information to defendant.
However, for purposes of this appeal, we will view the facts in the light
most favorable to plaintiffs and assume that the letter and releases were
faxed to defendant on May 25, 1994, the date of the letter.

[2] In 1994, Memorial Day fell on May 30.

not. Once, this is done I will advise you of our decision. But as of right now, we are not approving these releases. And any acceptance of settlements our insured makes without our approval, could hinder any future claims or settlements made with our company. Due to the fact, by doing this they would not be complying with the provisions of their contract of insurance with us.

Subsequently, defendant refused to arbitrate plaintiffs' underinsured motorist claim because plaintiffs had settled without its consent. Defendant asserted that the releases executed by plaintiffs completely destroyed its subrogation rights. On August 3, 1994, plaintiffs filed the instant lawsuit, claiming that defendant failed to comply with the terms of the underinsured motorist provision of its policy. On November 15, 1994, plaintiffs replaced their attorney.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10). In an opinion and order entered on May 5, 1995, the trial court granted defendant's motion. The trial court stated in its opinion:

Plaintiffs have presented no evidence indicating defendant consented to the language of the releases or settlement of the underlying suit. Moreover, plaintiffs cannot rely upon the language of their former attorney's May 25, 1994 letter as evidence that defendant waived its right to consent to the settlement. The letter amounts to a universal attempt to change a term of the insurance contract. Since plaintiffs have presented no evidence indicating a meeting of the minds on what amounts to a modification to the insurance contract, the attempt to force defendant's waiver of consent to the settlement is ineffective. Defendant has lost its subrogation rights and plaintiffs have lost the right to claim performance on the underinsured motorist provision of the insurance contract.

The trial court subsequently denied plaintiffs' motion for reconsideration.

On appeal, plaintiffs argue that the trial court erred in granting defendant's motion for summary disposition. Plaintiffs assert that a genuine issue of fact existed regarding whether defendant consented to the settlement of the underlying lawsuit by its failure to timely respond to the submission of the proposed releases.

An order granting or denying summary disposition is reviewed de novo. A motion for summary disposition may be granted pursuant to MCR 2.116(C)(10) when, except for the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Giving the benefit of reasonable doubt to the nonmovant, the trial court must determine whether a record might be developed that would leave open an issue upon which reasonable minds might differ. *Plieth v St Raymond Church*, 210 Mich App 568, 571; 534 NW2d 164 (1995).

An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566-567; 489 NW2d 431 (1992). Where the language of an insurance policy is clear and unambiguous, it must be enforced as written. Courts must be careful not to read an ambiguity into a policy where none exists. *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 469; 556 NW2d 517 (1996).

We conclude that defendant's policy is not ambiguous. Under its plain terms, the policy provides that an underinsured motorist claim will not be covered if the

resulting lawsuit is settled without defendant's consent. Waiver is defined as the intentional and voluntary relinquishment of a known right. Black's Law Dictionary (6th ed). It necessarily follows that conduct that does not express any intent to relinquish a known right is not a waiver, and a waiver cannot be inferred by mere silence. See 6 Couch, Insurance (3d ed), § 85:25, p 85-39 (stating that, as a general rule, a waiver cannot be inferred from the mere silence of the insurer). In the present case, it is undisputed that defendant did not explicitly consent to the settlement of plaintiffs' claims or waive its right to approve any settlement of plaintiffs' case.

Plaintiffs argue, however, that defendant should be equitably estopped from denying coverage because its failure to timely respond to their attorney's letter of May 25, 1994, led plaintiffs to believe that defendant had approved the releases. The doctrine of equitable estoppel rests on broad principles of justice and applies to actions at law and in equity. Equitable estoppel arises when a party, by representations, admissions, or silence intentionally or negligently induces another party to believe certain facts. The second party must not only have justifiably relied on this belief, but also must be subject to prejudice if the first party is permitted to deny the facts upon which the second party relied. *Penny v ABA Pharmaceutical Co (On Remand)*, 203 Mich App 178, 183; 511 NW2d 896 (1993).

Almost a century ago, the Supreme Court held that an insurer may be equitably estopped from denying coverage when it unreasonably delays in responding to its insured. In *Rauch v Michigan Millers' Mut Fire-Ins Co*, 131 Mich 281; 91 NW 160 (1902), the

insured sent a letter to its insurer inquiring whether taking out additional insurance would cause a conflict with his policy. The insurance company failed to respond to the letter, and the insured did obtain additional insurance. Over a year later, the insured submitted a claim. *Id.* at 283-284. The Court held that the insurer was estopped from claiming that the policy was voided by the insured's purchase of additional insurance, because it would have been unfair to allow the insurance company to retain the premium and remain silent until after a loss occurred before claiming that the policy had been voided. *Id.* at 287.

The Supreme Court also addressed the issue of estoppel in the insurance context in *Shelden v Michigan Millers' Mut Fire-Ins Co*, 124 Mich 303; 82 NW 1068 (1900). *Shelden*, like *Rauch*, involved an insurance policy that prohibited the insured from acquiring other insurance. In *Shelden*, after the loss had occurred, the insured inquired of the defendant insurance company when it would be sending its adjuster. On March 8, 1898, the insured informed the insurance company that an adjuster from another insurance company had already visited the scene. In response to the insurer's request, the plaintiff described the particulars of his additional insurance in letters dated March 11 and March 21. On March 29, the insurer notified the plaintiff that his insurance had been terminated when the other insurance had been taken out. *Id.* at 306-307. The plaintiff argued that by not denying its liability at once when told of the existence of the other adjuster, defendant had waived the issue. The Court disagreed, stating, "Defendant had the right to inquire into the facts before announcing its deter-

mination. There is no just claim of estoppel in regard to the delay of eight days." *Id.* at 310.

While an insurer may waive its right to insist upon forfeiture for breach of a policy provision by virtue of having induced the insured, by silence, to believe that no objection will be made, the insurer must fail to object within a *reasonable* time after notice. 9 Couch, Insurance (2d ed), § 37B:45, p 56. The inaction of the insurer must continue over a sufficient period to be significant. *Id.*

In reviewing the trial court's grant of defendant's motion for summary disposition, we view the facts in the light most favorable to plaintiffs. However, even applying this standard and assuming that plaintiffs' attorney did fax copies of his letter and the releases to defendant on May 25, 1994, we believe that rational minds could not disagree that defendant was not allowed a reasonable time to respond to the letter from plaintiffs' attorney. Accordingly, the trial court properly granted defendant's motion for summary disposition.

Our dissenting colleague, citing *Rauch*, concludes that the question whether an insurer's response is offered in a reasonable time is fact specific and therefore must go to the jury. We do not believe that the Supreme Court intended to establish such a rule in *Rauch*, a case where the insurer had failed to respond to its insured's correspondence after *more than a year* had passed. See *Rauch*, *supra* at 283-284. Under the dissent's reading of *Rauch*, *every* claim that an insurer did not give a timely reply to its insured would give rise to a jury question, regardless of how patently inadequate the time allowed for response.

We do not believe that Supreme Court precedent supports such a rule. The Supreme Court's decision in *Rauch* must be read in conjunction with its decision two years earlier in *Shelden, supra,* which *Rauch* did not purport to overrule or modify. In *Shelden,* the Court held that estoppel did not apply where the insurer took eight days to respond to a letter from its insured. *Shelden, supra* at 310. Accordingly, we hold that where reasonable minds can differ, whether a reasonable time for the insurer's response has been allowed or has expired is a jury question. However, where reasonable minds cannot differ, summary disposition is appropriate.

We do not mean to imply by this holding that an insurer may procrastinate in responding to its insured. Insurers have a duty to respond to correspondence and queries from their insureds in a reasonably timely manner. However, insureds must also afford the insurance company a reasonable time to offer a response, particularly before taking any action that conflicts with the explicit terms of the policy.

In the present case, plaintiffs' counsel allowed defendant five days, over a holiday weekend, to indicate its disapproval of the proposed releases. This constitutes neither a reasonable time for response nor a significant period of inaction on the part of defendant. As the Supreme Court stated in *Shelden,* an "[insurer] ha[s] the right to inquire into the facts before announcing its determination." *Shelden, supra* at 310. Defendant should have been allowed a reasonable period to have its legal counsel review the proposed releases. Moreover, defendant was entitled to some time to conduct its own investigation to discover whether the Coopers were collectible. Defend-

ant was apparently prejudiced by the inadequate amount of time permitted for inquiry, because it asserts both that the releases destroyed its subrogation rights and that it has determined that the Coopers were collectible, contrary to what it had been told by plaintiffs' counsel.

The fact that defendant did not receive the May 25, 1994, letter until after the deadline unilaterally imposed by plaintiffs' counsel suggests that defendant would not have been able to respond to the alleged facsimile of the letter by mail. Plaintiffs have not claimed that there were any extenuating circumstances that would justify imposing such an abbreviated deadline on defendant. There is nothing in the record that indicates that plaintiffs could not have delayed finalization of the settlements and releases until after the insurer had a reasonable time to examine the terms and determine whether the tortfeasors were collectible. In fact, plaintiffs maintain in their brief on appeal that they would have canceled the consent judgment hearing if defendant had notified them of its refusal to consent to the settlement, thus implicitly acknowledging that they would not have been prejudiced by a reasonable delay. Defendant in fact did respond on June 15, 1994, less than three weeks after the date of plaintiffs' counsel's letter. Under these facts, the trial court did not err in granting defendant's motion for summary disposition.

Affirmed.

SAWYER, P.J., concurred.

MURPHY, J. (*dissenting*). I respectfully dissent.

In the context of insurance law, it is apparent from Michigan case law that the doctrine of equitable

estoppel may apply in certain circumstances in which
an insurer's failure to object within a reasonable time
to an insured's request operates as a waiver of the
breach of the insurance clause. See *Rauch v Michi-
gan Millers' Mut Fire-Ins Co*, 131 Mich 281; 91 NW
160 (1902).

In this case, there was a genuine issue of material
fact upon which reasonable minds could differ con-
cerning whether defendant's failure in responding to a
facsimile of the May 25 letter by 2:00 P.M. on May 30,
1994, induced plaintiffs to believe that the settlement
and the releases had been approved and that plain-
tiffs had justifiably relied upon this belief to their det-
riment. To establish factual support for their claim,
plaintiffs rely upon their counsel's statement in his
affidavit in which he claimed to have sent a facsimile
of the letter to defendant on May 25. Although
defendant denied that plaintiffs' counsel sent a fas-
cimile of the letter, maintaining that there was noth-
ing to support plaintiffs' factual assertion apart from
their former counsel's self-serving statement in his
affidavit, we must, solely for the purpose of reviewing
a motion for summary disposition under MCR
2.116(C)(10), give plaintiffs the benefit of a reasona-
ble doubt and assume that a fascimile of the letter
was sent by plaintiffs' counsel and was received by
defendant on May 25, 1994.[1] That being so, the issue

---

[1] In actuality, the questions whether plaintiffs did send a facsimile of
the letter to defendant on May 25, and, if so, whether and when defendant
received the letter would be for the jury. It is only for purposes of review
that it is assumed that plaintiffs did send and defendant did receive the
facsimile of the letter on May 25. Obviously, if plaintiffs did not send the
facsimile and defendant was not aware of the letter until May 31, then by
not contacting plaintiffs before 2:00 P.M. on May 30, defendant could not
have intended to waive, or be estopped from enforcing, the condition
requiring consent.

is whether defendant's failure to notify plaintiffs' counsel by 2:00 P.M. on May 30, 1994, about its objection to the releases effected a waiver on defendant's part of the condition requiring consent for any settlement for an underinsured motorist claim.

I agree with the majority's holding that "where reasonable minds can differ, whether a reasonable time for the insurer's response has been allowed or has expired is a jury question. However, where reasonable minds cannot differ, summary disposition is appropriate." *Ante* at 379. Where I disagree with the majority is that I do not believe "that rational minds could not disagree that defendant was not allowed a reasonable time to respond to the letter from plaintiffs' attorney." *Ante* at 378. While it may be unreasonable to expect defendant to arrive at a final conclusion within the time limit set by plaintiffs, plaintiffs' letter made clear the constraints involved, and I do not think it would be unreasonable to expect *some* response, by phone or fax, from defendant, even if that response was that defendant needed more time for a final response. However, defendant offered nothing. I do not think five days was a "patently inadequate" amount of time to expect some type of response.

I do not consider this holding to run contrary to *Shelden v Michigan Millers' Mut Fire-Ins Co*, 124 Mich 303; 82 NW 1068 (1990), where the Supreme Court held that the insurer's delay of eight days did not establish an estoppel claim. While the Court in *Shelden* appears to have held in that case that a claim of estoppel does not exist in regard to a delay of eight days, the key question is whether the insurer's response was offered in a reasonable time, and, in my

opinion, an answer to that question is fact specific. Therefore, I think it would be improper to read *Shelden* as establishing a bright-line rule and holding that, no matter what the factual circumstance, a claim of estoppel is precluded, as a matter of law, when the delay is less than eight days. The application of any temporal bright-line rule established nearly a century ago is questionable in light of the advances in technology and communications, and the increased complexity of the insurance industry, particularly the automobile insurance industry, since the turn of the century. While I am aware that this Court cannot disregard Supreme Court precedent on the basis that the precedent is obsolete, *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993), we are bound to follow Supreme Court precedent only in cases involving substantially similar facts and issues, see *Pokriefka v Mazur*, 3 Mich App 534, 536; 143 NW2d 151 (1966), rev'd on other grounds 379 Mich 348; 151 NW2d 806 (1967). In my opinion, the advancements in technology and the increased complexity of the insurance industry alone are sufficient to factually distinguish the case at bar from *Shelden* and preclude the necessity of applying any bright-line rule from that case. Any conclusion in this case is fact driven, and therefore, in my opinion, *Shelden* is of little value in the matter before us.

I do not think that every claim of untimeliness will create a jury question. There may be cases in which reasonableness can be determined as a matter of law. However, such a conclusion is fact specific, and, at least in this case, better drawn by a jury. The letter that plaintiffs' counsel claimed to have faxed on May 25 contained specific information about the consent

judgments to be entered on May 31 and called for immediate action on defendant's part in advising plaintiffs' counsel about whether defendant objected to the releases. While plaintiffs' counsel allowed defendant only five days in which to respond to his specific request, there is nonetheless a question of fact upon which reasonable minds could differ whether, on the basis of the demands made by plaintiffs and the actions needed to be taken by defendant, defendant was allowed a reasonable time in which to offer some response. I do not wish to imply that I have concluded that defendant was actually given a reasonable time in which to reply,[2] I simply do not think we should come to a conclusion regarding reasonableness, as a matter of law, on the basis of the record before us.

I would reverse and remand for further proceedings.

---

[2] On the basis of the majority's holding that "rational minds could not disagree that defendant was not allowed a reasonable time to respond," *ante* at 378, I am hesitant to arrive at such a conclusion because it would mean one of two things: either the majority is mistaken or I am of irrational mind. After great introspection and contemplation, I am confident, and indeed hopeful, it is not the latter, but simply that I have a different opinion regarding what to expect from rational minds.