Patrick H. COLLEY and Diana M. Colley, Plaintiffs–Appellants,

v.

CONSECO MEDICO INSURANCE COMPANY, Defendant–Appellee.

No. 00–1306.

United States Court of Appeals, Sixth Circuit.

May 23, 2001.

Before JONES, SILER, and GILMAN, Circuit Judges.

GILMAN, Circuit Judge.

In this diversity of citizenship action, Patrick H. and Diana M. Colley, a married couple residing in St. Clair County, Michigan, sought to recover under a health insurance policy that was rescinded by Conseco Medico Insurance Company, a corporation based in Rockford, Illinois. Conseco issued the policy after receiving a completed questionnaire regarding the Colleys' medical histories and conducting a telephone interview with Diana. It contended that the Colleys' right to recover under the policy was barred because of various material misrepresentations that Diana made to Conseco in both her written application and in her subsequent interview. The district court granted summary judgment in Conseco's favor and dismissed the Colleys' complaint. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

On March 4, 1998, Diana applied for a Conseco health insurance policy to cover herself, her husband Patrick, and their two children. The policy was sold by an agent of a company later acquired by Conseco, and was intended to replace an existing policy issued to the Colleys by Time Insurance Company. In completing the application, Diana answered in the negative to all medical questions, including whether any of the Colleys had been diagnosed by or received treatment from a medical practitioner for a disorder of the spine within the past ten years, taken any prescription medication within the past six months, been treated by any physician or other health care practitioner within the past five years, been to a clinic, hospital, or other medical facility for treatment within the last five years, or been advised to have an operation, surgical procedure, or additional tests performed within the last five years.

Diana also attested that she had responded with answers that were correct, complete, and wholly true to the best of her knowledge and belief, acknowledging that Conseco would rely upon those answers in deciding whether to issue a health insurance policy to her family. In another part of the form, however, Diana stated that Patrick had received medical treatment on October 17, 1997 from Dr. Barry Gross for sore muscles and an aching back. She claims that the selling agent assured her that the policy would issue despite Patrick's prior problems with his back.

Diana was then interviewed by a Conseco representative over the telephone on March 16, 1998. During this interview, she was asked whether anyone to be covered had visited a specialist, such as a chiropractor, in the past five years. Diana responded that Patrick had received an injection for muscle spasms in his back three years before. She also told the representative that Patrick had seen Dr. Gross one month prior to the interview about a muscle spasm in his back, but had received no treatment or medication. Diana further told the interviewer that Patrick had received workers' compensation for a back injury from which he fully recovered within one month.

Based on Diana's responses, the interviewer asked a number of supplemental questions from a special "Back Questionnaire" about Patrick's back condition. Diana's answers to these questions indicated that Patrick suffered from a muscle spasm three years earlier, and that the spasm affected his lower back. She stated that the spasm was a result of Patrick having "lift[ed] something wrong" and that Patrick recovered within a month. Diana also told the interviewer that Patrick never had a herniated or bulging disk, that the pain from his injury never radiated to his legs, shoulders, or neck, that he never had back surgery, that he was not currently receiving any medical treatment, that he did not lose any time from work or normal occupational duties, and that there was no reoccurrence of his symptoms. Based on the information presented in the application and during the telephone interview, Conseco issued the Colleys a health insurance policy on April 15, 1998.

Soon after Conseco issued the policy, the Colleys began to submit numerous claims based on an ear infection for which Patrick sought treatment. After the Colleys submitted their first bill for Patrick's ear treatment, Conseco sent the Colleys a letter dated July 3, 1998, informing them that it was evaluating their claim and would have a decision within 30 days. Conseco sent the Colleys similar letters after they submitted additional bills for Patrick's ear infection. Eventually, the Colleys scheduled surgery to correct Patrick's ear problem on December 14, 1998. Conseco gave the Colleys pre-certification approval for the surgery.

Meanwhile, Conseco began investigating the Colleys' claims. In the process of its investigation, Conseco discovered that Patrick had a long history of significant back problems. It learned that his problems began after he was injured at work in June of 1992 and continued until at least February of 1998. Subsequent to his workplace injury, Patrick was diagnosed and treated for chronic lumbar myofascitis, recurring muscle spasms of the lumbar spine, radiculopathy, nerve root compression, bulging disc, disc herniation, chronic long-term myofascitis syndrome, chronic myositis, and chronic pain syndrome.

Conseco's investigation also revealed that the diagnostic procedures and treatments for Patrick's back problems were quite extensive. From January 18 to January 20, 1993, for example, Patrick was admitted to a hospital and treated for his back pain. He also underwent a computerized axial tomography (CAT) scan, a magnetic resonance imaging (MRI) scan, and an electromyographic (EMG) scan. On November 15, 1993, a doctor performed a lumbar myelogram on Patrick, which is an exploratory diagnostic procedure. The doctor then ordered a post-myelogram computerized tomography (CT) scan of Patrick's lumbar spine, which determined that Patrick had a bulging disk in his lower back. Three years later, another doctor at a different hospital treated Patrick's chronic lower back pain and right lumbar radiculopathy with a continuous caudal epidural, right lumbar facet blocks, and a nerve root injection. Conseco contends that these last three treatments are surgical procedures.

At least 125 pages of the joint appendix are devoted to chronicling Patrick's back problems between 1992 to 1998. Conseco's brief points out that Patrick was examined and treated by Dr. Gross on at least 18 occasions in 1994, 16 occasions in 1995, 7 occasions in 1996, and at least once in both 1997 and 1998. During these years, Patrick also received many medical tests, some from other doctors, and took a variety of painkillers and anti-inflammatory medications. Patrick admitted in his deposition that he was unable to work for almost three years between 1992 and 1998.

Finally, Diana testified that she was aware that Patrick had back problems and had received back treatments from Dr. Gross on multiple occasions between 1993 to 1996, and that she had accompanied Patrick to the hospital once or twice "when he went into an operating room and was operated upon."

In a letter dated January 19, 1999, Conseco offered the Colleys an amendatory rider deleting Patrick (but not the other covered individuals) from the policy. When the Colleys declined to accept Conseco's offer, Conseco mailed the Colleys another letter rescinding their policy as of its effective date. The letter, which was dated March 4, 1999, stated that if Conseco had been aware of the true extent of Patrick's back problems, it would never have issued the insurance policy. Conseco then refunded the full amount of the premiums that the Colleys had previously paid.

A complaint against Conseco was filed by the Colleys in the St. Clair County Circuit Court on March 22, 1999. Conseco removed the action to the United States District Court for the Eastern District of Michigan and later filed a motion for summary judgment. The district court granted the motion on February 25, 2000. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *See, e.g., Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir.2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B. Challenge to the rescission of the insurance policy

Conseco argues that the Colleys made material misrepresentations in the policy application, and that they had no right to recover because Conseco would not have issued the policy had it known the extent of Patrick's back problems. Under Michigan law, material misrepresentations can bar an insured's right to recover under a disability insurance contract if the misrepresentation affected the insurer's acceptance of the risk. *See* Mich. Comp. Laws § 500.2218 (stating that an insured's right to recover is not barred under § 2218 unless the "false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer"). Michigan courts have applied § 2118 not only to disability insurance contracts, which are expressly covered by the statute, but to insurance policies in general. *See Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28, 33–36 (Mich.1999) (applying § 2218 to credit life insurance); *Wiedmayer v. Midland Mut. Life Ins. Co.*, 414 Mich. 369, 324 N.W.2d 752, 754–55 (Mich. 1982) (applying § 2218 to group health and group life insurance); *Lipsky v. Washington Nat'l Ins. Co.*, 7 Mich.App. 632, 152 N.W.2d 702, 705 (Mich.Ct.App.1967) (applying § 2218 to hospitalization insurance).

If the misrepresentations affected the insurer's acceptance of the risk, they do not need to relate to the same medical

condition for which the insured seeks coverage. *See Wickersham v. John Hancock Mut. Life Ins. Co.,* 413 Mich. 57, 318 N.W.2d 456, 459 (Mich.1982) (stating that "there is no requirement under [§ 2218] of a causal relation between a misrepresentation and the circumstances of the loss before a right to recover under an insurance policy is barred because of a material misrepresentation").

■ In order for Conseco to avoid payment on the basis of material misrepresentation, it must establish that: (1) the Colleys made misrepresentations of fact, (2) Conseco relied upon the misrepresentations, and (3) the misrepresentations were material to either the risk accepted or the hazards assumed by Conseco. *See United of Omaha Life Ins. Co. v. Rex Roto Corp.,* 126 F.3d 785, 787 (6th Cir.1997) (describing Michigan law regarding material misrepresentation). Conseco has established all three of these elements.

First, the record shows that Diana made numerous misrepresentations of fact to Conseco, despite being informed that Conseco would rely on her statements in determining whether or not to issue a policy. The Colleys, in their brief, concede that "there were several misrepresentations included [in the application]. They all related to the condition of Patrick Colley's back." Their argument, however, is that Conseco had notice of the misrepresentations contained in the application, because Diana made statements in the later telephone interview that "were the exact opposite of those contained in the insurance application."

Conseco responds to the Colleys' claim by arguing that Diana continued to misrepresent the extent of Patrick's back problems in the telephone interview, even on matters that required no medical knowledge. For example, Diana (1) described Patrick's condition as only a "muscle spasm," even though his condition was far

more severe, (2) disclosed the name of only one physician that Patrick had seen regarding his back condition, even though Patrick had seen several physicians, (3) represented that Patrick had fully recovered from his back condition within "one month" after his injury, even though Patrick had back problems for at least six years, (4) denied that Patrick had lost any time from work as a result of his back problems, even though he was unable to work for almost three years, (5) denied that Patrick had any specific medical conditions, such as a herniated or bulging disk, even though he had actually been diagnosed with these conditions, (6) denied that Patrick's back pain radiated to his legs, even though it did, and (7) denied that Patrick took prescription medication for his back condition, even though he did. Given these and other discrepancies, we find that Conseco has more than satisfied its burden of showing misrepresentations of fact in both the insurance application and in Diana's subsequent telephone interview.

■ Next, the record demonstrates that Conseco relied upon the misrepresentations. *See United of Omaha Life Ins. Co.,* 126 F.3d at 787 (stating that "an insurer who seeks to have a policy voided on the basis of misrepresentation must prove," among other things, "that the insurer relied on it"). Conseco presented two affidavits signed by Bernard Chaput, the Second Vice President and Chief Underwriter for Conseco, stating that Conseco relied upon Diana's statements in "determining both whether to issue a medical insurance policy for Patrick Colley and/or at what premium rate a policy would issue."

■ Finally, the record demonstrates that the misrepresentations were material to the risk accepted by Conseco. *See United of Omaha Life Ins. Co.,* 126 F.3d at 787. Chaput stated that had Conseco been aware of Patrick's hospital visits and back

problems, or of the medications he was taking, it would never have issued the policy to Patrick. Conseco also included excerpts from its Personal Major Medical Field Underwriting Guide, describing various classifications for illnesses (including spinal problems) and providing guidelines for underwriters responding to applications from persons suffering from these illnesses. Given Chaput's testimony and the excerpts from the Underwriting Guide, we find that Conseco has satisfied its burden of showing that the misrepresentations were material to the risks it accepted. *See Clark v. John Hancock Mut. Life Ins. Co.,* 180 Mich.App. 695, 447 N.W.2d 783, 786 (Mich.Ct.App.1989) (holding that an insurance company has the right to void an insurance contract where the company presents an affidavit describing its underwriting guidelines and attests that it would have denied the plaintiff's application for the contract had his condition been disclosed).

C. Argument that Conseco waived its right to rescind

To avoid the consequences of Diana's misrepresentations, the Colleys argue that Conseco waived its right to rescind the policy because (1) Conseco should have rescinded the policy earlier, rather than "wait[ing] until more than a month after [Patrick's] surgery and two months after approving it to rescind the medical insurance policy," and (2) its telephone interview with Diana should have given Conseco notice that Diana had made misrepresentations about Patrick's condition in her written application.

Waiver, however, "is defined as the intentional and voluntary relinquishment of a known right. It necessarily follows that conduct that does not express any intent to relinquish a known right is not a waiver, and a waiver cannot be inferred by mere silence." *Moore v. First Sec. Cas. Co.,* 224 Mich.App. 370, 568 N.W.2d 841, 844 (Mich.

Ct.App.1997) (internal citations omitted). Conseco's conduct indicates no intent to relinquish its right to rescind the policy based on material misrepresentations. Instead, Conseco's detailed investigation of Patrick's medical records demonstrates its continued effort to determine whether material misrepresentations were made that would allow it to rescind the policy.

■ Nor did Conseco's pre-certification approval of Patrick's surgical procedure bind Conseco to insuring his surgery. The health insurance policy expressly states that the pre-certification process only addresses whether Conseco determines a procedure to be "medically necessary for the care and treatment of the Covered Person's Injury or Sickness," not whether the procedure is otherwise excluded from coverage.

Even had the telephone interview put Conseco on notice about the misrepresentations contained in the application form, Diana's continued misrepresentations provided additional grounds for Conseco to rescind the insurance policy. These false statements, all of which related to the extent of Patrick's back problems, materially affected Conseco's acceptance of risk. *See Clark,* 447 N.W.2d at 783–86 (allowing rescission where the insured made false representations in an application for a disability policy by failing to disclose that he had experienced epilepsy during childhood, with the insurance company testifying that it would have rejected the insured's application had it known of the history of epilepsy). Accordingly, having carefully examined the record, we agree with the district court's conclusion that Conseco did not waive its right to rescind the Colleys' health insurance policy.

D. Claim of fraud and fraudulent inducement

■ Finally, the Colleys argue that Conseco engaged in fraud and fraudulent

inducement by "entic[ing] Diana Colley into switching insurance companies and continuing to collect premiums when it had no intention of paying the claim." None of the actions cited as fraudulent by the Colleys, however, rise to the level of fraud. Under Michigan law, one of the key elements for a successful fraud claim is that the plaintiff must demonstrate that the defendant made the representation either recklessly, without any knowledge of its truth, or with actual knowledge that the representation was false. *See H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.*, 234 Mich.App. 550, 595 N.W.2d 176, 187 (Mich.Ct.App.1999).

When Conseco's agent told Diana that the company would cover the Colleys, he did so only after Diana grossly mischaracterized Patrick's severe back conditions as simply an "aching back." The agent, therefore, had a good faith basis for his representation that the Colleys would be covered. Nor did the agent act recklessly in making this representation because, under Michigan law, "an insurer does not owe a duty to the insured to investigate or verify that individual's representations or to discover intentional material misrepresentations." *Hammoud v. Metro. Prop. & Cas. Ins. Co.*, 222 Mich.App. 485, 563 N.W.2d 716, 718 (Mich.Ct.App.1997).

Furthermore, the insurance policy explicitly states that the written policy is the entire contract between Conseco and its insureds, and that "[n]o agent may change this policy or waive any of its provisions." Any oral assurances made by the selling agent, therefore, were not binding upon Conseco. *See Marlo Beauty Supply v. Farmers Ins. Group of Cos.*, 227 Mich. App. 309, 575 N.W.2d 324, 330–31 (Mich. Ct.App.1998) (holding that an insurance company was not estopped from denying coverage to an insured where its agent gave assurances that the insurance company would provide the same coverage as the insured's prior carrier and where no consideration from the insured was received for such a promise).

A plaintiff must also demonstrate that he suffered damages as a result of the alleged misrepresentation in order to recover. *See id.* The Colleys fail to meet this criterion. They presented no evidence that Patrick's claims would have been covered had they kept their policy with Time Insurance. Indeed, the evidence in the record demonstrates otherwise, because the Colleys were, at the time, already being investigated by Time Insurance for making material misrepresentations regarding Patrick's back condition in their application for insurance with that carrier. We accordingly find no error in the district court's dismissal of the Colleys' claims for fraud and fraudulent inducement.

## III. CONCLUSION

For all the reasons set forth above, we AFFIRM the judgment of the district court.